# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARK LUSHER,** | : | **Case No. 1:05CV1754** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | <u>**OPINION AND ORDER**</u> |
| **CITY OF MANSFIELD, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

Before the Court are three pending motions:  (1) Defendants The Center for Individual and Family Services ("the Center"), and Rudy A Nye's ("Nye") (collectively, the "Center Defendants") *Motion for Summary Judgment* (Doc. 22);[1] (2) Plaintiff Mark Lusher's ("Plaintiff" or "Lusher") *Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e)* (Doc. 36);[2] and the City of Mansfield (the "City"), Mayor Lydia Reid, Fire Chief Michael Hartson, and Service Safety Director Ronald Kreuter's (collectively, the "Mansfield Defendants") *Motion for Summary Judgment* (Doc. 37).[3]

---

[1]     On June 26, 2006, Plaintiff filed an Opposition to the Center Defendants' Motion for summary judgment as to Counts 2, 3, and 5 of Plaintiff's First Amended Complaint (Doc. 26).  The Center Defendants filed a *Reply in Support of their Motion for Summary Judgment* on July 11, 2006 (Doc. 32).

[2]     On August 31, 2006, Defendants The Center for Individual and Family Services ("the Center"), and Rudy A Nye ("Nye") filed an *Opposition to Plaintiff's Motion to Alter or Amend Judgment* (Doc. 38)*.  The Mansfield Defendants filed their *Opposition to Plaintiff's Motion to Alter or Amend Judgement* (Doc. 39) on September 11, 2006.  No reply was filed.

[3]     Plaintiff filed an *Opposition to Motion for summary judgment Of The Mansfield Defendants* (Doc. 41) on October 2, 2006.  On October 13, 2006, The Mansfield Defendants filed a *Reply in Support of their Motion for Summary Judgment* (Doc. 42).

The issues are now ripe for consideration, and this Order disposes of all three motions.

For the reasons more fully explained below, Plaintiff's *Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59* (Doc. 36) is **DENIED**.  The Center Defendants' *Motion for Summary Judgment* (Doc. 22) is **GRANTED in part**.  The Mansfield Defendants' *Motion for Summary Judgment* (Doc. 37), is **GRANTED in part**.

## I.      BACKGROUND.

### A.      Factual Background.

Plaintiff Mark Lusher was employed as a firefighter for the City of Mansfield from 1992 to 2004.  As a result of his employment as a firefighter with the City, Lusher became a member of the International Association of Firefighters, Local 266 (the "Union"), and was subject to a collective bargaining agreement ("CBA") between the Union and the City.

It is apparent that Lusher has struggled with an alcohol dependency for some time.  Indeed, Lusher's Second Amended Complaint alleges that he is disabled and/or handicapped with the disease of alcoholism.  The record indicates that, prior to Lusher's employment with the City of Mansfield, he was convicted once of driving under the influence of alcohol and once of public intoxication.  Lusher first went to The Center, an alcohol rehabilitation treatment provider, in 1999 at the request of his ex-wife.  According to Lusher, by 2002, after suffering from considerable personal tragedy, he was consuming a substantial amount of alcohol on a daily basis.  Later, during the fall of 2003, Lusher refused to submit to a breathalyser test during a traffic stop.  As a result, Lusher's driver's license was suspended.  Upon suspension of his license, the City of Mansfield placed Lusher on an administrative suspension.[4]

---

[4] All City employees are required to maintain a valid driver's license.

In September 2003, Lusher met with Andy Heth, the president of the Union, and Defendant Ronald Kreuter, Mansfield's Safety Director, to address his driver's license and administrative suspensions.  At that meeting, Lusher signed a Letter of Understanding in which he agreed:  (1) to enter into an alcohol treatment program; (2) to permit the treating individuals to inform the Safety Director of his progress at least once per month; (3) to remain in treatment until it was deemed unnecessary by the City; (4) to submit to alcohol testing until treatment was completed; and (5) to make all treatment appointments.  The City agreed, by virtue of the Letter of Understanding, to allow Lusher to return to work after attending his first treatment appointment, subject to the conditions described above.  It was further agreed that, if Lusher failed to comply with the terms described in the letter, he would be subject to discipline, including removal.

In compliance with his Letter of Understanding, Lusher enrolled in The Center's treatment program from September 2003 to November 2003.  During the enrollment process, Lusher signed certain documents authorizing The Center to provide information to the City.  Lusher admitted that he was unable to abstain from alcohol during his first course of treatment.  Nye, Lusher's counselor, informed the City that Lusher continued to consume alcohol during his treatment and recommended additional treatment.

On December 29, 2003, the City held another meeting at which Lusher and Union president Heth were told that the City considered Lusher to be a danger to the fire department.  As a result of that meeting, Lusher signed a Last Chance Agreement ("LCA") in which he agreed:  (1) to enter into an alcohol treatment program; (2) to permit the treating individuals to inform the Safety Director of his progress; (3) to comply with the conditions of the treatment program; and (4) to submit to alcohol testing until treatment was completed.  The LCA also provided that if Lusher failed to comply with its

3

conditions, failed to progress or comply with his treatment program, or if the tests revealed any alcohol in his system, he would be terminated and that such termination would not be appealable.[5]  The City agreed to hold Lusher's termination in abeyance, but retained sole discretion to determine whether Lusher was in compliance with the conditions of the LCA.[6]

Pursuant to the terms of the LCA, Lusher returned to The Center beginning in February 2004 for additional treatment.  Lusher's treatment plan required him to abstain from consuming alcohol. Lusher, nevertheless, admitted that he continued to drink alcohol during the course of his second treatment program.  In April 2004, upon the conclusion of his second treatment plan, Lusher apparently agreed to enter into a third treatment plan, which was to incorporate a thirty-day inpatient stay. According to Lusher, however, the treatment program at The Center, which was not covered under his insurance plan, presented a significant financial burden.  Lusher also states that Nye's recommendation that he undergo an inpatient treatment plan, as a result of his inability to abstain from alcohol, would have exacerbated his financial burden.  Lusher further claims that Nye knew a number of Lusher's acquaintances which presented a conflict of interest.  As a result, Lusher alleges that he discontinued

---

[5]      Although the LCA purported to include a waiver of Lusher's right to appeal the City's termination, it is clear that it did not do so.  Indeed, Lusher contested his termination through three mechanisms: (1) the CBA's grievance procedure, (2) the Mansfield Civil Service Commission, and (3) the Ohio court system.  Each of those avenues denied relief to Lusher; none, however, used the LCA's "waiver" as a basis for its denial.  In fact, Judge Henson of the Richland County Court of Common Pleas found that, under Ohio law, "neither the union nor the employee may by agreement be required to relinquish the right to grieve" and that "the LCA could not and did not remove his termination from the CBA grievance procedures."  Lusher v. City of Mansfield, No. 04 CV 975, at 6-7 (Richland Cty. C.P. May 25, 2005).

[6]      The LCA also included a clause that stated that it superseded any "subsequent agreements" between the Union and the City, including any drug and alcohol policies in the collective bargaining agreement.  No *subsequent* agreement between the Union and the City, however, appears to be relevant here.

4

his treatment program to seek a second opinion.  Lusher, claims that, approximately one month later, in late-May 2004, he informed City Human Resources Director Jeff Fogt and Nye that he intended to seek a second opinion about the course of his treatment.  On June 1, 2004, Nye informed the City that Lusher had not returned for counseling since April, that his treatment program would be terminated, that he continued to consume alcohol during his second course of treatment, and that he would be considered an unsuccessful discharge.

On June 3, 2004, Lusher was summoned by Defendant Hartson to a meeting with Safety Director Kreuter, Fire Chief Hartson, and Human Resources Director Jeff Fogt.  Lusher alleges that he had only a few minutes advance notice of what became his pretermination hearing.  At approximately 8:10 a.m., Kreuter, Hartson, and Fogt convened the pretermination meeting with Lusher. During the meeting, Lusher was asked about his treatment and discharge from The Center.  Lusher admits that he told Kreuter, Hartson, and Fogt during the pretermination meeting that he did not abstain from using alcohol during the course of his treatment, and, indeed, consumed alcohol prior to his counseling sessions on at least two occasions.   The City terminated Lusher on June 3, 2004, immediately following the meeting.

Pursuant to the CBA between the Union and the City, Lusher field a grievance relating to his discharge on June 8, 2004.  It is undisputed that Lusher pursued the grievance through Step 5 of the CBA.[7]  Simultaneously, pursuant to Ohio Revised Code § 124.34, Lusher appealed his termination to

---

[7]    Step one of the CBA grievance procedure requires the employee to attempt to informally resolve a dispute with his or her supervisor.  At step two, the employee submits a written grievance to the union grievance committee, if the union determines a grievance exists, if the committee determines that no grievance exists, no further action is taken.  For step three of the grievance procedure, the union presents the grievance in writing to the assistant chief of fire who must hold a meeting and respond, in writing, to the grievance.  At step four, the step three procedure is repeated with the chief of fire.  At step five, the procedure for steps

5

the Mansfield Civil Service Commission (the "Commission").  The Mansfield Civil Service Commission denied his appeal for lack of jurisdiction, finding that, under Ohio Revised Code §§ 4117 *et seq.*, the CBA superceded the right to appeal to the Commission under Ohio Revised Code § 124.34. Lusher appealed the Commission's decision to the Richland County Court of Common Pleas.  The Common Pleas Court affirmed the decision of the Commission, finding that the "LCA could not and did not remove his termination from the CBA grievance procedures.  And, moreover, because [Lusher] did not exhaust all his remedies under the CBA" the Commission correctly determined that it did not have jurisdiction to hear the appeal.  On July 11, 2005, Lusher filed his original complaint in this action.

### B.    Lusher's Complaint.

Lusher's Second Amended Complaint[8] asserts seven causes of action against various Defendants.  Three of these causes of action are brought pursuant to federal statutes.  Count One, brought under 42 U.S.C. § 1983, alleges that the Mansfield Defendants deprived Lusher of his procedural due process rights under the Fourteenth Amendment.  In sum, Lusher alleges that the Mansfield Defendants unconstitutionally deprived him of his property interest in his position as a firefighter when they held an improper hearing prior to his termination and/or that his post-termination options did not provide adequate due process.  In Count Two, Lusher asserts essentially the same claims against the Center Defendants, alleging that they were acting under color of law when they

---

four and three is repeated with the service-safety director.  If these five steps fail to resolve the issue, under step six *the union may* request arbitration.

[8]    As discussed below, portions of Lusher's Second Amended complaint went beyond the leave to amend authorized by the Court.  Thus, the only relevant additions to Lusher's first Amended Complaint are those that address his disability-based claims.  See infra, section II(A); see also June 16, 2006 Minute Order (Doc. 25); August 18, 2006 Order.

participated in the events that resulted in the unconstitutional deprivation of his property rights.  Count Five alleges a civil conspiracy in which all the Defendants illegally conspired to deprive him of his rights, in violation of 42 U.S.C. § 1983.

The remaining four causes of action are grounded in state law.  Counts Three and Four assert breach of contract claims against The Center Defendants and the City, respectively.  In short, the breach of contract claims assert that The Center Defendants failed to comply with certain statutory provisions of the Ohio Administrative Code upon Lusher's discharge from treatment, and that the City breached an "employment contract" with Lusher when it failed to allow him to fully pursue treatment options consistent with the parties' contemplation under the LCA.  Counts Six and Seven allege that the City and Hartson, respectively, discriminated against Lusher in violation of Ohio Revised Code  4112.02 because he is an alcoholic.

## II.    DISCUSSION.

### A.    Plaintiff's Motion to Alter or Amend Judgment.

On June 16, 2006, the Court granted Plaintiff leave to amend his first Amended Complaint.  (See Doc. 25).  The scope of Plaintiff's leave to amend was limited to the addition of "disability-based claims."  On June 28, 2006, after moving for and receiving an extension of time to amend, Plaintiff filed a Second Amended Complaint.  The Second Amended Complaint added the disability claims, but also made substantial changes to the allegations supporting claims previously asserted in Plaintiff's first Amended Complaint.  The Center Defendants and the Mansfield Defendants, therefore, jointly moved to strike the Second Amended Complaint.  (See Doc. 31).  Plaintiff did not oppose the joint motion to strike.  On August 18, 2006, the Court found Defendants' unopposed motion to strike well-taken and granted it in part, striking all portions of the Second Amended Complaint that went beyond what the

7

Court authorized.  On August 30, 2006, Plaintiff filed his *Motion to Alter or Amend Judgment Pursuant to Rule 59(e)* (Doc. 36) seeking relief from the Court's decision to strike portions of the Second Amended Complaint.

### 1.  Legal Standard.

Generally, Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment in three circumstances:  (1) when there is a change in controlling law; (2) when previously unavailable evidence becomes available; and (3) to correct a clear error of law or prevent injustice.  See, e.g., United States ex rel. Am. Textile Mfr. Inst. v. Limited, 179 F.R.D. 541, 547 (S.D. Ohio 1998) (citations omitted).

### 2.  Discussion.

Plaintiff's motion to alter or amend the judgment presents none of the three circumstances contemplated by a typical Rule 59(e) motion.  Instead, Plaintiff's motion simply argues that the Court should reconsider its decision to strike portions of the Second Amended Complaint because leave to amend a complaint should be freely given, thus, the Court should have permitted Plaintiff's to file the Second Amended Complaint.  Plaintiff's argument is not well-taken.[9]

As a threshold matter, Plaintiff's argument that the Court should have freely given leave to amend the complaint omits some critical facts – first the Court previously granted Plaintiff leave to file an amended complaint, which Plaintiff filed without objection.  See Order, October 31, 2005.

---

[9]  Plaintiff, moreover, failed to raise this argument in response to Defendants' joint motion to strike.  A motion to alter or amend judgment under Rule 59(e) generally does not permit a party to make arguments that were not previously presented to the Court.  See Elliott v. Simmons, 100 Fed. Appx. 777, n.7 (10th Cir. 2004); United States v. One Tract of Real Property, 107 F.3d 868, n.6 (4th Cir. 1997) (citing Ray E. Friedman & Co. v. Jenkins, 824 F.2d 657, 660 (8th Cir.1987); Hashwani v. Barbar, 822 F.2d 1038, 1041 (11th Cir.1987)).

Subsequently, Plaintiff changed counsel and *again* sought leave to file a second amended complaint, which the Court *also* granted over Defendants' objections.  The Court, however, limited the scope of the second amended complaint because:  (1) the matter was pending for very nearly a year prior to Plaintiff's request; (2) Plaintiff had already amended his complaint once; (3) Defendants' had already answered Plaintiff's original Complaint and First Amended Complaint; (4) significant discovery had already taken place; and (5) certain defendants had already filed dispositive motions.  Plaintiff, however, failed to comply with the Court's instructions regarding the permissible scope of the Second Amended Complaint.  Plaintiff's argument that the Court should freely grant leave to amend a complaint, therefore, is misplaced.  In short, Plaintiff's current situation is the result of his failure to comply with the Court's instructions and his failure to respond to the Defendants' motion to strike the Second Amended Complaint.  Neither of these reasons provides a compelling justification to alter or amend the Court's prior judgment.

Notwithstanding the discussion above, Plaintiff's substantive argument in support of the Second Amended Complaint is lacking.  Rather than providing a basis to find that the proffered Second Amended Complaint serves the interest of justice, Plaintiff's "position [is] that the Plaintiff did not change any operating causes of action, but merely clarified the First Amended Complaint."  (Pl's. Motion to Alter or Amend, at 3).  Plaintiff further states that the Second Amended Complaint is comprised of, "causes [which] are the same in their essence, [but] the pleading style is different."  (Pl's. Motion to Alter or Amend, at 9).  The Second Amended Complaint, however, almost completely redrafted the causes of action asserted in the first Amended Complaint.  The Court, therefore, found that it properly served the interests of justice by permitting the Second Amended Complaint to assert two new causes of action which otherwise may not have been heard.  Permitting a third redrafting of

the factual allegations of the existing claims at such a late stage, however, was not warranted.[10] Plaintiff's motion, therefore, is denied.

**B.      Defendants' Motions for Summary Judgment.**

**1.      Standard of Review.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment, bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of Plaintiff's claim or by demonstrating "an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If a Defendant meets this burden, Lusher must "set forth the specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The substantive law identifies which specific facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment Lusher must "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The non-movant's evidence is to be believed, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). Lusher, however, must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise

---

[10]      It is clear to the Court that the primary impetus for redrafting the existing causes of action in the Second Amended Complaint was Plaintiff's change of counsel.

10

properly supported motion" for summary judgment.  Anderson, 477 U.S. at 247-48.

### 2.       The Mansfield Defendants' Motion for Summary Judgment.

Lusher's claims against the Mansfield Defendants for violations of 29 U.S.C. § 1983 and for conspiracy under 29 U.S.C. § 1985 arise from his alleged unconstitutional termination from his employment as a firefighter.   Lusher asserts that, as a tenured public employee, he had a constitutionally protected property right in his position as a firefighter.  The Mansfield Defendants do not dispute this.

Lusher argues that the Mansfield Defendants deprived him of his property right by terminating him without providing:  (1) timely notice of the charges against him; and (2) an opportunity to present evidence in his defense.  The Mansfied Defendants argue that Lusher's pretermination proceedings exceeded the minimum due process requirements.  In the alternative, the Mansfield Defendants argue that the post-termination due process Lusher was afforded would have cured any potential pretermination infirmities and that, because Lusher would have been discharged even if he had been afforded all of the measures which he claims to have been denied, no claim for damages exists.

### a.       Lusher's Federal Causes of Action.

When examining a claim under 29 U.S.C. § 1983 for a violation of due process rights, a court must undertake a two-part analysis.  Leary v. Daeschner, 228 F.3d 729, 741 (6th Cir. 2000).  Initially, the Court must determine whether a plaintiff has a property interest that entitles him to due process protection.  See id.; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  A property interest is "'created and . . . defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  Leary, 228 F.3d at 741 (quoting Bd. of Regents of State Colleges

v. Roth, 408 U.S. 564, 577 (1972).  As a classified civil servant in Ohio, Lusher's protected property interest in his employment was created by statute.[11]  See Ohio Rev.Code §§ 124.11(B), 124.34(A); Loudermill, 470 U.S. at 538-39.  Thus, because Lusher had a protected interest, and was deprived of it by virtue of his June 3, 2004 termination, the Court must undertake the second part of the analysis and determine "what process [wa]s due."  Loudermill, 470 U.S. at 541.

### (i) Lusher's Pretermination Hearing Did Not Violate His Constitutional Rights.

"When a plaintiff has a protected property interest, a predeprivation hearing of some sort is generally required to satisfy the dictates of due process."  Leary, 228 F.3d at 742.  Lusher attacks his pretermination hearing on two grounds.  First, Lusher argues that he was unable to properly prepare for the hearing because he was provided inadequate advance notice.  Second, Lusher challenges the hearing itself, arguing that it was insufficiently detailed to comport with due process.  Lusher's arguments, however, overstate the minimum requirements for a constitutionally-sound pretermination hearing.

"Due process is a flexible principle whose requirements depend on the facts of the individual case."  Leary, 228 F.3d at 743.  The requirements of due process are "notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  Loudermill, 470 U.S. at 546.  In Loudermill, the Supreme Court explained that a pretermination hearing, "need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions – essentially, a determination

---

[11]     The parties have not argued that Lusher is an *un*classified civil servant due to, for example, the size of the Mansfield Fire Department.  Accordingly, for purposes of summary judgment, the Court assumes that Lusher fits within the definition Ohio Rev.Code §§ 124.11(B).

of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46; see also Leary, 228 F.3d at 742. ("The predeprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake.").  "[W]hen deciding on the necessary process, [a] court must balance 'the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous' decision." Leary, 228 F.3d at 742-43 (quoting Loudermill, 470 U.S. at 542-43).

A court must also consider, "the sufficiency of predeprivation procedures . . . in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required." Id. (citing Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1349 (6th Cir.1992)).  As discussed below, Lusher was able to avail himself of various postdeprivation review options.  Under such circumstances, a more limited pretermination hearing is permissible. Cook v. Charter Twp. of Mt. Morris, 117 F.3d 1420 (Table) 1997 WL 401184, at *3 (6th Cir. July 15, 1997) (citing West v. Grand Cty., 967 F.2d 362, 367 (10th Cir. 1992)) ("'The standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies.'"); Day v. City of Southfield, 61 F.3d 903 (Table) 1995 WL 433587, at *4 (6th Cir. July 21, 1995) (internal citations omitted) (affirming grant of summary judgment, stating: "the fact that post-deprivation remedies are available allows for an even less formal pre-termination hearing . . . .  because [plaintiff] was given notice of at least the sense of the charges [and] availed herself of the opportunity to respond to those allegations, her due process rights under Loudermill have been satisfied.").

Lusher's first argument, that he should have had more time to prepare for the hearing,

13

misapprehends the nature of the "notice" required for a sound pretermination hearing.  The "notice"

referred to in Loudermill is "*oral or written notice of the charges against him. . . .*"  Id. at 546

(emphasis added).  Thus, an employee has a right to be informed of the nature of the charges, but is not

necessarily entitled to significant advance warning of the time of the hearing.  Indeed, other courts have

found pretermination proceedings to be constitutionally adequate where an employee was only

informed of the nature of the charges during the hearing.  See, e.g., Abel v. Auglaize Cty. Highway

Dept., 276 F. Supp.2d 724, (N.D. Ohio 2003); DeMarco v. Cuyahoga Cty. Dept. of Human Serv., 12

F. Supp. 2d 715 (N.D. Ohio 1998) (collecting cases).  For purposes of a pretermination hearing, such

notice is adequate because, as noted above, a pretermination hearing is merely "an initial check"

against mistakes.  Thus, the critical inquiry at this early stage is whether the charges are accurate and

the employee understands them, not whether the employee has had a sufficient amount of time to fully

prepare for an adversary-type hearing.  Lusher's affidavit acknowledges that he was present during his

pretermination hearing and that Nye's letter which detailed his failure to comply with his treatment

program was discussed.  Lusher admitted that, during the pretermination hearing, Fogt, the City's

Human Resources Director, asked him what he had to say in his defense.

It is clear to the Court that Lusher was not unfairly surprised by the subject matter discussed

during his pretermination hearing.  As discussed above, Lusher's alcohol dependance was the subject

of at least two[12] other meetings attended by his superiors and Union officials.  The same conduct that

led to his breach of the LCA led to the meetings at which he agreed to the terms of the Letter of

Understanding and the LCA.  Thus, the Mansfield Defendants, prior to the pretermination hearing, had

---

[12]     According to the Mansfield Defendants, Lusher attended other hearings relating
his potential termination due to his alcohol dependency that took place prior to
the meeting to discuss the Letter of Understanding, the Last Chance Agreement,
or his pretermination hearing.

already laid out the scope of their concerns and their expectations at least twice. At the pretermination hearing, the long-standing issue impacting, and eventually ending, his employment was abundantly clear. The pretermination hearing was merely a confirmation of Lusher's behavior as described by Nye's letter and an opportunity for Lusher to respond to the letter (he responded by admitting the truth of the statements contained in the letter). After examining the record, the Court finds that Lusher knew that the pretermination hearing was directed at his failure to abstain from alcohol which was a violation of his treatment plan and, thus, the terms of the LCA. Lusher, therefore, had adequate notice of the reasons for his termination.

Lusher's second argument contends that he should have been permitted to go home to retrieve documents and present evidence that he was pursuing a second opinion. As support, Lusher cites Powell v. Mikulecky, 891 F.2d 1454 (10th Cir. 1989), and contends that it stands for the proposition that an employee must be given the chance to present evidence to support his position. In Powell, the Tenth Circuit stated:

> **The pretermination hearing is merely the employee's chance to clarify the _most basic_ misunderstandings** or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee. The idea of conducting two identical hearings runs counter to traditional principles of adjudication.

Id. at 1458 (emphasis added). The Court's reading of Powell does not support Lusher's position. Rather, the Powell decision appears to recognize that a pretermination hearing should only permit an employee to clarify an error or mistake on the part of the employer, not to collect evidence and engage

15

in an elaborate adversarial procedure.  Lusher has presented no evidence showing that his termination was the result of a mistake or a misunderstanding.  Once again, Lusher overstates the essential character of the pretermination hearing.  Indeed, numerous courts have held that an elaborate pretermination hearing is not mandated.  See Hilbert v. Ohio Dept. of Rehab. & Corr., 121 Fed. Appx. 104, 115 (6th Cir. 2005)("a plaintiff alleging a due process violation . . . must show that he was not provided the **most basic** notice of the charges, description of the evidence against him, and some opportunity to tell his side of the story.") (emphasis added, citations omitted); Cook, 1997 WL 401184, at *3 ("While a hearing is necessary, it need not be elaborate.") (citations omitted); Day v. City of Southfield, 61 F.3d 903 (Table), 1995 WL 433587, at *4 (6th Cir. July 21, 1995) ("Loudermill's pretermination opportunity to respond is not required to be an elaborate opportunity to respond but an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true.") (internal quotations and citations omitted)

As discussed above, prior to, or at least during, the pretermination hearing, Lusher was aware that he was being terminated due to his failure to comply with the terms of the LCA.  Nye's letter was discussed with Lusher during the hearing.  Lusher admitted during his deposition that Fogt was visibly agitated during the pretermination hearing and asked him what he had to say for himself about violating his agreement with the City.  Thus, the three basic requirements of a pretermination hearing – notice, the presentation of evidence, and the opportunity to respond – were met.

Lusher also argues that the pretermination hearing was unduly brief, only lasting approximately twenty to thirty minutes.  The duration of a pretermination hearing, however, is not the dispositive inquiry.  Indeed, it seems Lusher chose to focus his response time on his desire to seek a second

16

opinion.  Lusher argues that he should have been given the opportunity to present documents that would have shown that he was seeking a second opinion, and that such documents would have dispelled the Mansfield Defendant's suspicions that he was not seeking a second opinion.  First, the Court is not persuaded that procedural due process requires such a level of inquiry at a pretermination hearing.  Second, it is clear that Lusher was terminated for his failure to comply with the terms of the LCA, a failure that had undeniably occurred *as of* the pretermination hearing.  In sum, the LCA permitted the City to terminate Lusher if he failed to comply with the terms of his second treatment program, and Lusher admitted that he failed to comply with the terms of his second treatment program. A second opinion, rendered sometime after Lusher admitted to violating his treatment plan, therefore, would have had little or no bearing on his termination.[13]  Thus, the Mansfield Defendants failure to adjourn the pretermination proceeding to hear evidence related to those issues did not violate Lusher's right to procedural due process.

The Court finds that the reasons for Lusher's termination were readily apparent to him during the pretermination hearing.  Lusher, moreover, was presented with the evidence of his non-compliance with the LCA and permitted to respond to the charges which resulted in his termination.  Considering the entire context of the pretermination hearing, it is clear to the Court that it satisfied its procedural due process mandate as an "initial check against mistaken decisions" to "clarify most basic

---

[13]     Simply put, the Mansfield Defendants provided Lusher with a means to be reinstated to his position via the Letter of Understanding.  Lusher failed to meet the terms of that agreement.  The City offered Lusher a second opportunity to retain his employment by virtue of the ***Last*** Chance Agreement.  Lusher again failed to meet the terms of the agreement.  The moment Lusher failed to comply with the terms of the LCA, the Mansfield Defendants could discharge him.  The Mansfield Defendants were not obliged to hold Lusher's termination in abeyance subsequent to his violation of the LCA while he sought a further opinion as to the severity of his dependency which may have permitted him to pursue a less restrictive *third* treatment.

17

misunderstandings." Accordingly, Lusher's claim that the pretermination hearing denied him his due process rights is not well-taken.

### (ii) Lusher's Postdeprivation Options Provided Due Process.[14]

The second component of Lusher's procedural due process claim involves the proceedings subsequent to his termination. As discussed above, Lusher was subject to a CBA. Pursuant to the CBA, he pursued a grievance through step five of the grievance process. See *infra* n. 7. As part of that process, Lusher was afforded a second hearing, held on July 26, 2004. According to Lusher, this hearing also took approximately 20-30 minutes. Lusher argues that the hearing did not satisfy the requirements of due process because the City failed to notify his attorney and there was confusion as to whether the union could represent Lusher or whether he waived his right to appeal by virtue of the

---

[14]  The Mansfield Defendants also argue that Lusher's due process claims are barred by the decision of the Richland County Court of Common Pleas under the doctrine of *res judicata*. It is certainly worth noting that the Richland County Common Pleas Court found that Lusher's "due process rights were not violated." Lusher, No. 04 CV 975, at 5-6. It is also worth noting, however, that the court in Lusher found that "common pleas courts have no subject matter jurisdiction unless all procedures have been exhausted," and prefaced its opinion by stating "to the extent it retains jurisdiction to do so, this Court finds [the Mansfield Defendants'] actions terminating [Lusher] are sustained." Id. at 7, 1. Absent jurisdiction to make them, that court's thoughtful findings on the merits are apparently dicta. Lusher's claims against the Center Defendants, moreover, were not asserted in that action such that they would be barred from examination here. Nevertheless, as discussed below, the Court independently arrives at the same conclusion which also serves to deny Lusher's claims against the Center Defendants.

LCA.[15]  Nevertheless, the hearing proceeded, and Lusher admits that he was represented by Union personnel during the hearing.  During this second hearing, Lusher was permitted to present the evidence he referred to, and desired to present, at his pretermination hearing.  Lusher's grievance was also denied at step five.  Lusher argues that he did not pursue step six of the grievance procedure (arbitration) because it would have been futile.  Under the CBA, however, the decision to pursue arbitration rests with the union, and not Lusher.[16]

Even assuming Lusher's allegations raise legitimate due process concerns about the pre-arbitration hearing step of the grievance process, those allegations do not support a claim against the Mansfield Defendants.  Indeed, the Sixth Circuit's recent decision in Rhoads v. Board of Educ. of Mad River Local School Dist., 103 Fed.Appx. 888 (6th Cir. 2004) addresses circumstances bearing a striking resemblance to those before this Court.  In Rhoads, the Court addressed the effect of a CBA's grievance procedure on an employee's post-termination due process rights.  The Sixth Circuit found a plaintiff's claim against a city actor that alleged a pre-arbitration hearing held pursuant to a CBA's grievance process was unconstitutional to be "unpersuasive," stating:

In fact, we need not consider whether [defendant] was an impartial decision

---

[15]    Even where confusion exists about how or where to properly pursue postdeprivation remedies, when a plaintiff is actually able to avail himself of those options, a claim for denial of procedural due process will not lie. Collyer v. Darling, 98 F.3d 211, 228 (6th Cir. 1996).  Here, it is undisputed that Lusher pursued his grievance up through step five, and appealed his termination to the Mansfield Civil Service Commission and an Ohio court of common pleas.  None of these impartial bodies relied upon the alleged waiver of appeal contained in the LCA.  See infra, n. 5.

[16]    Lusher has not asserted a claim against the Union alleging that it breached any duty to represent him adequately during the grievance procedure.  That fact alone arguably bars any wrongful discharge claim against the Mansfield Defendants.  Because the parties only address this issue in passing, and given the other conclusions the Court reaches herein, the Court does not address it either.

19

> maker at Step III [of the grievance process] *or whether [plaintiff's] due process rights*
> *were violated in a more general manner at that hearing*.  *Even if the hearing was*
> *inherently biased against her, the availability of arbitration at Step IV provided Rhoads*
> *with an adequate procedural safeguard against such bias.*

Id. (emphasis added) (citing Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir.1983)).  Nor did the

Sixth Circuit agree with Rhoads that a union's decision *not* to pursue arbitration somehow impacted

the due process rights afforded to her by the city.  Citing Jackson, the Sixth Circuit opined: "'[t]he

Union, . . . had the ultimate power to make a fair and responsible determination as to whether it would

invoke the arbitration provision . . . . *The right to proceed to arbitration provide[s] [an employee] with*

*an adequate due process safeguard even if the hearing conducted by the [e]mployer earlier had been*

*inherently biased.*'" Id. (emphasis added).  With respect to the issue *sub judice* the Sixth Circuit stated:

"[t]he fact that the Union elected not to pursue arbitration on [plaintiff]'s behalf does not amount to a

deprivation of her right to due process by [a non-union defendant]." Id. (collecting cases, citations

omitted).  The Sixth Circuit concluded that, "[a]t most, the Union's decision constituted a breach of the

duty of fair representation owed by it to [plaintiff].  As such, [plaintiff's] recourse for the Union's

refusal to pursue arbitration of [the] grievance was against the Union, *not against [defendant]*." Id. at

898 (emphasis added, citations omitted).

Thus, under Sixth Circuit precedent, once the grievance process here proceeded past step five,

the Mansfield Defendants no longer had control such that they could have denied Lusher due process.

In short, under Sixth Circuit law, where a binding CBA exists, once the decision whether to arbitrate

passed to the Union, the Mansfield Defendants could not have impeded due process unless they

improperly interfered with the Union's decision.  Lusher has made no such allegations here.  The Court,

therefore, can find no basis upon which to distinguish Lusher's argument from the argument rejected

by the Sixth Circuit in <u>Rhoads</u>.  Accordingly, the Court finds that the Mansfield Defendant's did not

deny Lusher his right to procedural due process.[17]

### b.     Plaintiff's State Law Causes of Action.

When a federal court has dismissed the claims over which it had original jurisdiction, it may

decline to exercise supplemental jurisdiction over the remaining state-law claims.  <u>See</u> 28 U.S.C.

1367(c)(3).  "Whether a district court should decide a pendent state-law claim after dismissing all

claims over which it had original jurisdiction depends on a balancing of factors that include judicial

economy, convenience, fairness, and comity." <u>Ferrette v. Cuyahoga County Bd. of Elections</u>, 105 Fed.

Appx. 722, 727 (6th Cir. 2004) (citations and internal quotations omitted).  Long-standing Sixth Circuit

precedent holds that dismissal of the claims providing for original jurisdiction at an early stage (*i.e.*,

as here, on summary judgment) weighs strongly in favor of dismissing the remaining state-law claims.

<u>See</u> <u>Musson Theatrical Corp. v. Fed. Express Corp.</u>, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When

all federal claims are dismissed before trial, the balance of considerations usually will point to

---

[17]     To the extent Lusher asserts a Section 1985 claim, it also fails.  A claim under
Section 1985(3) requires that "there must be some racial, or perhaps otherwise
class-based, invidiously discriminatory animus behind the conspirators' action."
<u>Griffin v. Breckenridge,</u> 403 U.S. 88, 102 (1971).  Lusher has not alleged that he
is part of any federally-protected class of citizens for purposes of this lawsuit.  He
is certainly not protected by Section 1985(3).  <u>See Volunteer Medical Clinic, Inc.
v. Operation Rescue</u>, 948 F.2d 218, 224 (6th Cir. 1991) ("[T]he class of
individuals protected by [Section 1985(3)] are those so-called discrete and insular
minorities that receive special protection under the Equal Protection Clause
because of inherent personal characteristics.") (internal quotations omitted).
Second, because Lusher's underlying Section 1983 claim fails, his Section 1985
claim must also fail because "the absence of a section 1983 deprivation of rights
precludes a section 1985 conspiracy claim predicated on the same allegations."
<u>See</u> <u>Conrad v. Mich. Dep't. of Corr.</u>, No. 1:91-cv-99, 1992 WL 547168, at *3
(W.D. Mich. Oct. 5, 1992) (quoting <u>Caldeira v. Cty. of Kauai</u>, 866 F.2d 1175,
1182 (9th Cir.1989), *cert. denied*, 493 U.S. 817 (1989)).

dismissing the state law claims, or remanding them to state court if the action was removed.") (citing Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992) ("when all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction . . . ." (internal quotations and citations omitted); Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial."); Gaff v. Fed. Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir. 1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims.")).

Because Lusher's federal claims have been denied on summary judgment, the factors weigh in favor of declining to exercise jurisdiction over the remaining state-law claims. Here, the central focus of the briefing was Plaintiff's due process claims. Plaintiff's state-law claims, based in contract law and on a state anti-discrimination statute received far less attention.[18] The Court, therefore finds, that resolution of the remaining claims here would *not* substantially serve judicial economy and does not present an exception to the general guidance provided by the Sixth Circuit.[19]

---

[18]     Neither party, for example, has addressed why Lusher's state-law discrimination claims, which are based on his June 3, 2004 termination, but filed, at the earliest, on July 11, 2005, should not be barred by the one-year limitation described in Ohio Revised Code § 4112.051(A)(1).

[19]     The Richland County Court of Common Pleas examined the merits of Lusher's breach of contract claim and denied it. That court, however, appeared to question whether its own jurisdiction, invoked to address an appeal from the Commission, permitted it to address the other claims Lusher raised relating to his termination. See *infra* n. 14 (noting the court's remarks about jurisdiction). It does not, however, serve judicial economy or comity to resolve whether the issues were properly before the Court of Common Pleas; the state court can enter judgment on those issues at a later time if and when jurisdiction is invoked.

**2.      The Center Defendants' Motion for Summary Judgment.**

**a.      Plaintiff's Federal Law Causes of Action.**[20]

Lusher's federal law claims against The Center for violations of 29 U.S.C. § 1983 and 29 U.S.C. § 1985 are based on The Center's alleged involvement in the events that resulted in Lusher's termination from the Mansfield fire department.  According to Lusher, The Center Defendants were acting under color of state law when they caused the Mansfield Defendants to deprive him of his property right without due process.  Having decided that Lusher's termination by the Mansfield Defendants did not violate his constitutional right to due process, however, his dependant claims against The Center Defendants for causing or contributing to his alleged due process violations must also fail.

**b.      Plaintiff's State Law Causes of Action.**

For the reasons discussed in section II(B)(2)(b), Lusher's state law claims against The Center Defendants are also dismissed.[21]

**III.    CONCLUSION.**

For the foregoing reasons, Plaintiff's *Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59* (Doc. 36) is **DENIED**.  The Center Defendants *Motion for Summary Judgment* (Doc. 22) is **GRANTED in part**.  Summary judgment is granted to The Center Defendants on Count Two (under 42 U.S.C. § 1983 for violation of Lusher's due process rights) and Count Five,

---

[20]      Lusher also appears to claim that The Center Defendants and/or the Mansfield Defendants violated his substantive due process rights.  The Court, however, can see no conceivable basis for a substantive due process claim here.  Lusher simply relies on his own unsupported conclusion that his substantive rights were violated, without addressing the elements of the claim.  Therefore, to the extent Lusher has asserted a substantive due process claim, it also fails.

(civil conspiracy to violate Plaintiff's due process rights).  The Mansfield Defendants' *Motion for Summary Judgment* (Doc. 37), is **GRANTED in part**.  Summary judgment is granted to the Mansfield Defendants on Count One (under 42 U.S.C. § 1983 for violation of Lusher's due process rights) and Count Five, (civil conspiracy to violate Plaintiff's due process rights).  Plaintiff's remaining causes of action are **DISMISSED**.  Accordingly, having denied or dismissed each of Plaintiff's claims, this matter is **DISMISSED**.


**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated**:  **March 8, 2007**